## In re Marcus

Before Davis, P. J., Stern, P. J., and Parry, Brown, Jr., and Alessandroni, JJ. Parry, J., dissents.

*Louis E. Levinthal,* for respondent.

Per Curiam, June 15, 1934.—On June 11, 1927, Charles Quinn was injured while in the course of his employment with Garrity Brothers, under circumstances which imputed negligence to the City of Philadelphia. He was paid compensation by his employer's insurance carrier, Employers' Liability Assurance Corporation, Ltd., for 69 weeks at the rate of $12 per week, or a total of $828.

On August 22, 1927, Quinn, by his attorney, Louis Marcus, Esq., brought an action of trespass against the city to recover damages for personal injuries. About January 14, 1928, Quinn told a representative of the insurance company that he had brought suit against the city, whereupon on January 16, 1928, the

representative of the insurance company called on Mr. Marcus to ascertain whether he represented Quinn. This interview was followed by a letter from the insurance company to Mr. Marcus dated January 19, 1928, notifying him that it was the compensation carrier for Quinn's employer, stating the amount of compensation which had been paid, offering to assist him in the action against the city, and requesting his assurance that he would protect its subrogation rights. On March 26, 1928, the insurance company addressed a letter to the City of Philadelphia, city solicitor's office, containing the advice that it was the insurance carrier for Garrity Brothers, the employer, setting forth the circumstances of the accident, claiming the right of subrogation against the city as the wrongdoer to the extent of the compensation payable by reason of the injuries, and warning it that no settlement or payment should be made in violation of its subrogation rights. The same day it addressed another letter to Mr. Marcus, enclosing a copy of its letter to the city, referring to its letter to Marcus dated January 19th, advising the amount of compensation payable, and requesting an expression of his intentions with regard to the matter. On April 2, 1928, Mr. Marcus replied to this letter. He acknowledged its receipt and the receipt of the copy of the letter to the city solocitor, and stated:

"I assure you, just as I assured Mr. Brown some time ago, that in the event of a settlement, either amicable or otherwise, I will protect your interest."

On October 22, 1929, Mr. Marcus tried Quinn's case against the city and recovered a verdict of $1,800. The assistant city solicitor who tried the case was either ignorant of or overlooked the subrogation notice, and signed the mandamus. On December 26, 1929, Marcus presented the mandamus to the city treasurer for $1,800, plus interest, attorney's fee, plaintiff's witness bill, and costs, amounting to $1,878.13. This mandamus he assigned to United Security & Trust Company on December 26, 1929. It was paid March 7, 1930. Upon receipt of the money, he sent for his client with whom he had a 50 percent agreement, made certain deductions for costs, gave his client approximately $900, and kept the balance himself.

When this was ascertained, the insurance company brought a suit against the city claiming $828 with interest, because the city settled with Quinn in disregard of the subrogation notice. The case was tried before Parry, J., last March and Mr. Marcus was called as a witness to prove that the plaintiff Quinn was the man who received the compensation.

Upon his admitting all these facts at the bar of the court, he was ruled by the trial judge to show cause why he should not be disciplined for unprofessional conduct in that he converted to his own use the sum of $828, the amount to which Quinn's employer's insurance carrier was entitled under its right of subrogation, which he had agreed to protect.

In his answer to the rule, Mr. Marcus does not deny any of the facts but sets forth that he forgot that he had assured the insurance company that he would protect its subrogation rights and that on April 5, 1934, he paid to George H. Detweiler, Esq., counsel for the insurance company, the sum of $1,022. The amount of the verdict against the city is $1,029.48.

No additional facts were developed at the hearing upon the rule before the court in banc.

It is to be noted that the respondent admits his culpability in the premises, if it be established to the satisfaction of the court that he deliberately and consciously disregarded his duty to protect the interest of the insurance company at the time of settlement with his client.

He insists, however, that it was an oversight—that due to the lapse of time

he forgot completely that he had committed himself orally and in writing to protect the insurance carrier.

Inquiry, therefore, as to whether or not he was motivated by self-interest is pertinent.

It is true that his fee might be the same in either case. It is not equally true that, if he reimbursed the insurance carrier for compensation paid Quinn, he could have carried out his agreement with Quinn to give him 50 percent of the proceeds of the verdict. Nowhere does it appear that he sought or obtained a modification of his agreement with Quinn to conform with his undertaking to protect the insurance company. It is not improbable that, if the respondent had imposed these new conditions upon his client, the latter might have repudiated the entire agreement and taken his case elsewhere. In any event, the payment of $828 due the company out of the fund of $1,800 reduced the sum payable to Quinn, and it is not likely that Quinn would yield his share of the verdict under the agreement without protest.

Had the respondent performed according to his written undertaking, he would have been compelled to take up with the insurance company the matter of his compensation. While entitled to consideration for his services, this, nevertheless, would have delayed full payment of his fee. He would also have had to convince his client that from the verdict the amount due the company must first be paid.

It is evident, therefore, that there was a distinct advantage to respondent in settling with Quinn as he did, leaving the future to take care of itself.

There is, however, the possibility that he forgot.

After making due allowance for this possibility, we still feel that respondent acted improperly. To take him at his own word is to conclude that he treated his promise lightly or conveniently ignored it. For these reasons, the discipline to be imposed is not as severe as it otherwise might be.

After full consideration we are of the opinion that the rule should be made absolute and the respondent disciplined.

### Decree

And now, June 15, 1934, upon consideration of the rule, it is ordered that the rule be made absolute, and the said Louis Marcus be and is hereby reprimanded.

PARRY, J., dissentiente. — I must respectfully dissent from the conclusion reached by the majority of the court. The respondent pleads in excuse that he forgot that he had promised to collect and pay over the money to the insurance company, and since he asserts his entire innocence in the matter it follows that he forgot to whom the money belonged. The lawyer who prepares a case for trial becomes familiar with its history, and in any case the circumstances are recalled to his remembrance by the evidence at the trial and by the new trial argument. With all these aids to memory, the respondent asks us to believe that when he came to distribute the proceeds of his judgment he forgot to whom one half the proceeds belonged. Although he had no difficulty in remembering the fact that one half was his own, he was unable to carry in his mind the name of the person entitled to the other half.

The respondent, as regards the insurance company, bore the relation of lawyer to client, and I am unable to think that his offense is palliated by the fact that he gave the money to another client. That he did not enrich himself by the transaction appears altogether immaterial. He paid no attention to the demand of the insurance company for payment and permitted 4 years to elapse without

the slightest attempt at restitution. It was only after he was cited for discipline that he found it expedient to pay over the money.

I cannot accept the respondent's statement that he forgot, but it may be granted without affecting the conclusion I reach. For in this aspect of the case the offense lies in the failure to pay over the money to the owner after the mistake was discovered.

The Act of April 14, 1834, P. L. 333, provides, inter alia (sec. 74):

"If any such attorney shall retain money belonging to his client, after demand made by the client for the payment thereof, it shall be the duty of the court to cause the name of such attorney to be stricken from the record of the attorneys, and to prevent him from prosecuting longer in the said court."

I treat the notion that the respondent was forgetful as a delusion, and his motives for distributing the money in the way he did do not, I think, at all concern us. There may be room for difference of opinion as to the respondent's veracity, but none to doubt that he failed to pay the insurance company the money it demanded.

The sentence of the court in any view of the case I think inadequate but, if I may respectfully say so, a rational reading of the Act of 1834 appears to remove the question of sentence from our discretion, and I should therefore enter a decree of disbarment.